IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LONE WOLFE NATURAL RESOURCE
SERVICES INC.,

                    Plaintiff,

v.                                  CIVIL ACTION NO.   2:16-cv-1701

ARLEY JOHNSON,

                    Defendant.

MEMORANDUM OPINION & ORDER

Pending before the court is the Combined Motion to Dismiss & Memorandum of Law in Support [ECF No. 3] ("Motion") filed by the defendant, Arley Johnson.[1]  The plaintiff, Lone Wolfe Natural Resource Services Inc. ("Lone Wolfe"), did not file a timely response, making the Motion ripe for adjudication. However, for reasons discussed below, the court concludes this case should be **STAYED** pending the conclusion of the related bankruptcy proceedings. Because these proceedings are stayed, the court **DENIES** the Motion.

I.     **Background**

Lone Wolfe alleges that, in 2013, it entered into a construction agreement with Brooks Run Mining Company LLC ("Brooks Run"). Lone Wolfe agreed to provide

---

[1] The parties are advised that motions and memoranda should be filed as separate documents in the future. *See* S.D. W. Va. L.R. Civ. P. 7.1.

construction services at Brooks Run's Sumter Mine near Erbacon, West Virginia. And among other things, the parties' agreement "provided for some work under the said construction work to be paid for by Brooks Run to Lone Wolfe on an hourly basis as work was performed," "included penalties should the work not be completed within specified time periods," "included provisions excusing penalties for delays in the construction schedule caused by foul weather," and "provided for billings by Lone Wolfe to Brooks Run and payments by Brooks Run to Lone Wolfe on intervals of every other week." Compl. ¶¶ 7–10 [ECF No. 1-1]. Lone Wolfe commenced work under the construction agreement in 2014.

In February 2015, Lone Wolfe submitted an invoice to Brooks Run. Thomas Turpin, Lone Wolfe's manager of the Sumter Mine project, discussed the invoice with Johnson. According to Lone Wolfe, Johnson—an employee of Maxxim Shared Services LLC[2]—"had the authority to authorize payment of Lone Wolfe's billings and failed or refused to authorize payment of the said invoice." Compl. ¶ 13. During the discussion, "Johnson suggested that Lone Wolfe reduce the amount billed to Brooks Run during the month of February 2015 and increase the bill for January 2015 by the amount of the reduction from the December billing." *Id.* ¶ 11. After Lone Wolfe adjusted its invoices per Johnson's suggestion, Johnson rejected the invoices. In a subsequent

---

[2] Maxxim is a Delaware limited liability corporation. Order, *In re Alpha Nat. Res., Inc.*, No. 15-33896, at 25 (Bankr. E.D. Va. Aug. 5, 2015) [ECF No. 1-2] ("Bankr. Order"). Maxxim, like Brooks Run, is a subsidiary of Alpha Natural Resources Inc. and filed for bankruptcy in August 2015. *See id.*

conversation about the rejected invoices, "Johnson admitted that Lone Wolfe was owed $91,655.90 of the amount claimed by Lone Wolfe." *Id.* ¶ 14.

Through the end of 2014 and into spring of 2015, "the weather was unusually wet and rainy," which would permit "exceptions from the construction schedule for foul weather." Compl. ¶ 16. Lone Wolfe continued construction—under objection—at the urging of Johnson. Around the same time, Johnson was also "giving specific directions for work to be performed by Lone Wolfe's agents and employees in a particular manner and sequence." *Id.* ¶ 20. Nevertheless, "Johnson failed and refused to authorize payments to Lone Wolfe." *Id.* ¶ 18.

In early 2015, as the Sumter Mine project neared its end and Lone Wolfe continued its efforts, Johnson hired another contractor to perform work Lone Wolfe had agreed to perform. The presence of the second contractor interfered with Lone Wolfe's work schedules and efforts, "caus[ing] Lone Wolfe to not be able to complete the work required by the construction contract." Compl. ¶ 25.

On May 19, 2015, Brooks Run filed suit in the Circuit Court of Webster County, West Virginia, alleging Lone Wolfe breached an agreement and certain warranties related to the construction of a roadway. Compl., *Brooks Run Mining Co., LLC v. Lone Wolfe Nat. Res. Servs., Inc.*, No. 15-c-16 (W. Va. Cir. Ct. May 19, 2015) [ECF No. 3-1, at 4–6].[3] However, Brooks Run filed for bankruptcy on August 3, 2015, resulting in

---

[3] According to Johnson, Lone Wolfe's claims should have been brought as counterclaims in the state proceedings. Mot. 19. However, it is not evident from the face of the Complaint that the claims asserted in the state court case against Brooks Run and this case are identical. At this stage, the court assumes

an automatic stay of the state court proceedings. Order, *Brooks Run Mining Co., LLC v. Lone Wolfe Nat. Res. Servs., Inc.*, No. 15-c-16 (W. Va. Cir. Ct. Aug. 20, 2015) [ECF No. 3-1, at 1]; Notice of Commencement of Chapter 11 Cases & Meeting of Creditors, *In re Alpha Nat. Res., Inc.*, No. 15-33896 (Bankr. E.D. Va. Aug. 14, 2015) ("Notice").[4]

On November 2, 2015—after the automatic stay took effect—Lone Wolfe filed a proof of claim against Brooks Run in the United States Bankruptcy Court for the Eastern District of Virginia.[5] In the proof of claim, Lone Wolfe claims it is owed $141,606.10 for "construction of mine road." Claim No. 1130, *In re Brooks Run Mining Co., LLC*, No. 15-34016 (Bankr. E.D. Va. Nov. 2, 2015) [ECF No. 1-3].[6]

Lone Wolfe then filed its Complaint in the Circuit Court of Nicholas County, West Virginia, on January 15, 2016. The Complaint does not name Brooks Run as a defendant; the sole defendant is Johnson. In the Complaint, Lone Wolfe alleges Johnson's actions were done "with malice toward Lone Wolfe and constitute tortious interference by Johnson with Lone Wolfe's construction agreement contract with Brooks Run." Compl. ¶ 26.

---

they are not.

[4] This filing is available at http://pbadupws.nrc.gov/docs/ML1527/ML15272A519.pdf.

[5] Brooks Run's chapter 11 case is among 150 chapter 11 cases consolidated for procedural purposes by the United States Bankruptcy Court for the Eastern District of Virginia. Bankr. Ord. 39. The cases are jointly administered under *In re Alpha Natural Resources Inc.*, No. 15-33896 (Bankr. E.D. Va.). *Id.* at 40.

[6] Johnson argues this proof of claim relates to the construction agreement at issue here. Mot. 9 n.3. It is not evident from the face of the Complaint that subject matter of the proof of claim and the subject matter here are identical. As above, the court assumes they are not at this stage. *See supra* note 3.

On February 18, 2016, Johnson filed a Notice of Removal [ECF No. 1], removing this case to the United States District Court for the Southern District of West Virginia and invoking the court's bankruptcy jurisdiction under 28 U.S.C. § 1334. On the same day, Johnson filed his Motion, seeking dismissal of the plaintiff's Complaint on various grounds.

## II.    Jurisdiction

Despite the lack of diversity[7] and the absence of a federal question,[8] Johnson claims this court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 because this case is related to bankruptcy proceedings. Specifically, Johnson claims Maxxim— whose chapter 11 case is being jointly administered with Brooks Run's chapter 11 case—"has agreed to indemnify [him] in regard to this action." Notice of Removal ¶ 23. This case, Johnson argues, is related to the bankruptcy proceedings because he is entitled to indemnification from a debtor (i.e., Maxxim) if he is found liable in this case. This connection to the bankruptcy proceedings, the court concludes, is enough to vest this court with jurisdiction.

---

[7] Lone Wolfe is a West Virginia corporation, and its principal place of business is located near Nettie, West Virginia. Compl. ¶ 1. Johnson resides in Nicholas County, West Virginia. Compl. ¶ 2.

[8] Although Lone Wolfe does not enumerate counts against Johnson, Johnson interprets the Complaint as setting out two causes of action (i.e., breach of contract and tortious interference). *E.g.*, Mot. 3–4, 10. Both of these causes of action are state law claims; neither presents a federal question.

### III.   Discussion

The filing of a bankruptcy petition automatically stays any proceeding "against the debtor that was or could have been commenced before the commencement of the [bankruptcy proceedings]." 11 U.S.C. § 362(a)(1).[9] Generally, an automatic stay only applies to proceedings against the debtor, "not third party defendants or co-defendants." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). But a narrow exception expands the application of an automatic stay to cases involving "unusual circumstances." *Id.* These circumstances arise "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* For example, "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case" presents unusual circumstances that would warrant application of an automatic stay. *Id.*

Based on the allegations in the Complaint, Johnson is being sued in his capacity as an agent for Brooks Run. Early on, Lone Wolfe alleges "Johnson, at all times relevant hereto, was an agent or employee of . . . Brooks Run." Compl. ¶ 4. Then

---

[9] Lone Wolfe filed its Complaint after the commencement of the bankruptcy proceedings. *Compare* Notice 1 (noting bankruptcy petition was filed August 3, 2015), *with* Compl. 1 (bearing stamp dated January 15, 2016). Based on the allegations of the Complaint, however, Lone Wolfe could have commenced this case prior to the commencement of the bankruptcy proceedings. *E.g.*, Compl. ¶ 14 (alleging billing disputes arose around March 2015); Compl. ¶ 20 (alleging Johnson "usurped and assumed the management of Lone Wolfe's agents and employees" in the early months of 2015).

Lone Wolfe seeks to hold Johnson liable for failing to authorize payments due under the contract between Lone Wolfe and Brooks Run. *E.g.*, Compl. ¶ 15 ("The failure of . . . Johnson to authorize the payment of the amount he admitted was owed and the amount in dispute caused and directly resulted in Lone Wolfe never being paid for the said services."). Lone Wolfe also seeks to hold Johnson liable for, among other things, "insisting on work by Lone Wolfe during . . . inclement weather" and "giving specific directions for work to be performed by Lone Wolfe's agents and employees." Compl. ¶¶ 18, 20.

Finding that Johnson is liable for these actions and inactions amounts to finding Brooks Run is liable because, as Lone Wolfe alleges, Johnson acted and failed to act in his capacity as an agent for Brooks Run. This falls squarely within the "unusual circumstances" contemplated by the *Piccinin* Court. *See Piccinin*, 788 F.2d at 999 (finding stay warranted when "judgment against the third-party defendant will in effect be a judgment or finding against the debtor"). Even more, based on Johnson's representations, finding that Johnson is liable would trigger the indemnification responsibilities of another debtor (i.e., Maxxim). Notice of Removal ¶ 23 ("Maxxim has agreed to indemnify Defendant Johnson in regard to this action."); *see also Piccinin*, 788 F.2d at 999 (opining suit against third-party entitled to absolute indemnity by debtor would be subject to stay). These circumstances counsel in favor of staying this action pending the outcome of the bankruptcy proceedings concerning

Brooks Run and Maxxim. Accordingly, the court stays these proceedings pending resolution of Brooks Run's and Maxxim's bankruptcy proceedings.

## IV.   Conclusion

For the reasons explained above, the courts **STAYS** further proceedings in this case pending resolution of the related bankruptcy proceedings. As a result, the court **DENIES** the Combined Motion to Dismiss & Memorandum of Law in Support [ECF No. 3]. The defendant may refile the Motion when the stay is lifted.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:   March 18, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE